# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-868V
Filed: April 11, 2024

| | |
|---|---|
| * * * * * * * * * * * * * * | * |
| DARBY HENDRIX, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| * * * * * * * * * * * * * * | * |

*Andrew Downing, Esq.,* Downing, Allison & Jorgenson, Phoenix, AZ. for petitioner.
*Voris Johnson, Esq.,* U.S. Dept. of Justice, Washington, DC, for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth,** Special Master:

On July 16, 2020, Shanna Hendrix filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] ("Vaccine Act" or "Program") on behalf of her daughter, Darby Hendrix, ("petitioner"), who later substituted in as the petitioner when she reached the age of majority. ECF No. 19-20. Petitioner alleged that she suffered a "severe adverse reaction" after she received her first Gardasil[3] vaccination on July 17, 2017. Petition at 1-2, ECF No. 1. On March 15, 2021, petitioner elected to withdraw her petition after the expiration of the 240-day statutory period and now seeks an award of attorneys' fees and costs. ECF Nos. 23, 29.

For the reasons discussed below, I find that petitioner filed and maintained her claim in

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioners has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] Gardasil is a brand name of the human papillomavirus ("HPV") vaccine.

good faith and the claim had reasonable basis. Accordingly, she is entitled to an award of fees.

## I.     Background

The petition was filed on July 16, 2020, alleging that petitioner's "diagnoses included IBS [irritable bowel syndrome], anxiety, hormonal disturbances, dysautonomia, migraines, and insomnia, all of which reflect an autonomic dysfunction following her Gardasil vaccination." Petition at 3, ECF No. 1. Petitioner was ordered to file certified medical records, and affidavit, and a medical history questionnaire in accordance with the Program's Pre-Assignment Review ("PAR") process. ECF No. 5.

Petitioner filed various medical records, the Gardasil product monograph, the PAR questionnaire, a statement from petitioner's mother, and a statement of completion. Pet. Ex. 1-8, ECF No. 7, 9-14. The case was then assigned to the undersigned, and respondent was directed to file a status report identifying missing medical records and advising whether he was amenable to settlement discussions. ECF No. 15-17. Respondent filed that status report on February 17, 2021, advising he was not amenable to settlement and requested that petitioner file medical records that supported her alleged diagnoses as well as any record indicating that a physician causally linked these diagnoses to the Gardasil vaccine. ECF No.21.

Petitioner did not file any of the records requested. On March 15, 2021, the undersigned issued an order indicating that the statutory 240-day period for the special master's issuance of a decision had expired in this case. ECF No. 23. On March 16, 2021, petitioner filed a Notice of Intent to Withdraw her petition pursuant to § 300aa-21(b) and requested that the Court issue an order concluding proceedings. ECF No. 24. The Order Concluding Proceedings was issued on March 17, 2021. ECF No. 25.

Petitioner filed medical literature regarding adverse effects following the HPV vaccine on July 15, 2021. Petitioner's Exhibits ("Pet. Ex.") 9-13, ECF No. 27. She filed her VAERS report the following day. Pet. Ex. 14, ECF No. 28.

On July 16, 2021, petitioner filed a Motion for Attorneys' Fees and Costs, requesting a total of $13,901.11, representing $12,949.00 in attorneys' fees and $952.11 in costs. Motion for Fees at 6, ECF No. 29. Respondent contested the motion, arguing that because petitioner lacked a reasonable basis for her claim and did not file or maintain the claim in good faith, she therefore is not entitled to an award of attorneys' fees and costs. Response, ECF No. 30. Petitioner then filed a reply maintaining that good faith and reasonable basis for this claim exist. Reply, ECF No. 31.

On August 17, 2021, petitioner filed a supplemental Motion for Attorneys' Fees and Costs, seeking an additional $2,314.00 in attorneys' fees to account for the time since the filing of the original fee motion. Supp. Motion, ECF No. 32. In total, petitioner requests **$16,215.11** in attorneys' fees and costs. *Id*. at 1. Respondent did not respond to the supplemental motion.

Thereafter, on November 29, 2022, petitioner filed a Notice of Additional Authority,

stating she was filing an "additional, newly published authority" related to Gardasil. Pet. Ex. 15[4], ECF Nos. 34-35. On December 8, 2022, respondent responded, objecting to petitioner's filing of additional authority on both procedural and substantive grounds. ECF No. 36.

Petitioner correctly stated that she "was statutorily compelled to initiate this claim prior to pursuing a cause of action against [the vaccine manufacturer] directly." Motion for Fees at 1. She withdrew her petition eight months after filing and before the claim's substantive basis could be evaluated. As more specifically discussed in *Atjian* and *Stratton*, the Chief Special Master detailed the many cases brought by the same counsel alleging injuries related to the HPV vaccine, all of which were withdrawn in accordance with the terms of the Vaccine Act and its Rules solely for the purpose of joining them with other similar cases against the vaccine manufacturer pending in another forum. *See Atjian v. Sec'y of Health & Human Servs.*, No. 21-1413V, 2022 WL 17587757, at *1 (Fed. Cl. Spec. Mstr. Oct. 18, 2022) (discussing in detail the Act and Rules governing early termination in the Program); *Stratton v. Sec'y of Health & Human Servs.*, No. 20-1515V, 2023 WL 2337224, at *1 (Fed. Cl. Spec. Mstr. Mar. 3, 2023). Similarly, in *Thomas*, another Special Master addressed the same issues and arguments presented herein, concluding that the petitioner was entitled to fees. *Thomas v. Sec'y of Health & Human Servs.*, No. 20-886V, 2021 WL 2389837, at *1 (Fed. Cl. Spec. Mstr. May 17, 2021). While I am not bound by other special masters' decisions, I see no reason why I should not take guidance from the detailed decisions already issued on this subject. I agree with the special masters' reasoning in the above-mentioned cases and apply it in this matter.

## II. Entitlement to Attorneys' Fees and Costs

The Vaccine Act permits fees in unsuccessful cases where appropriate, including in cases that are terminated without final resolution such as here. This is in keeping with the Program's goal of ensuring that petitioners have adequate assistance from counsel when pursuing their claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorney's fees and costs may be awarded even when the petition was untimely filed). There is a threshold requirement for fees under such circumstances, however – petitioners must demonstrate "that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). However, fees can still be adjusted or denied entirely even where reasonable basis is established.

The Federal Circuit has explained that the relevant analysis involves two distinct inquiries: (1) a subjective one assessing whether the petition was brought in good faith and (2) an objective one ascertaining whether reasonable basis for the petition existed. *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Good faith is a subjective test, satisfied through subjective evidence"); *Turner v. Sec'y of Health & Human Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation."); *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano*

---

[4] Jesper Mehlsen et al., *Autoimmunity in patients reporting long-term complications after exposure to human papilloma virus vaccination*, J. AUTOIMMUNITY (2022), filed as "Pet. Ex. 15."

3

*v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)) (addressing the objective requirements of reasonable basis).

Good faith is a subjective standard. *Simmons*, 875 F.3d at 635. Simply put, good faith is "whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007. As a result, a petitioner's mere belief in the legitimacy of a vaccine claim can supply the required good faith – no matter how factually misplaced that belief may be. *See Atjian*, 2022 WL 17587757, at *5-6 (discussing good faith extensively).

"Reasonable basis … is an objective test, satisfied through objective evidence." *Cottingham*, 971 F.3d at 1344. The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). As noted in prior cases, reasonable basis is a lenient standard. *Hughes v. Sec'y of Health & Human Servs.*, No. 16-930V, 2021 WL 6621169, at *3 (Fed. Cl. Spec. Mstr. Dec. 29, 2021) *mot. for rev. denied*, 154 Fed. Cl. 640 (2021). Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham*, 971 F.3d at 1345-46.

### III.     Parties' Arguments

#### A. Petitioner's Motion

Petitioner argued that she was statutorily compelled to initiate this claim prior to pursuing a cause of action against the vaccine manufacturer directly. Motion for Fees at 1. When the Court did not act on petitioner's case within 240 days, she opted to withdraw her claim from the Vaccine Program, and this did not change the fact that the claim was filed with a good faith reason for believing the vaccination was the trigger for petitioner's injuries and that a reasonable basis existed for submitting the claim. *Id.* at 1-2.

Petitioner argued that the existence of good faith in filing the claim is evidenced by an affidavit from petitioner's mother[5] stating her belief that petitioner was injured by the Gardasil vaccine. Motion for Fees at 3; *see* Pet. Ex. 8. Additionally, a VAERS report was filed that notified the CDC of the adverse reaction. Motion for Fees at 3; Pet. Ex. 14. Further, petitioner requested an order concluding proceedings for the purpose of pursuing her claim against the manufacturer directly. Motion for Fees at 3.

Referencing the medical records filed, petitioner argued that she received an HPV vaccine on July 17, 2017, after which she felt dizzy when standing and had a rash on her mouth, face, arms, and hands within a few days. She had vision issues, weakness, numbness in her body, and a stiff neck. Motion for Fees at 3. A September 6, 2017 record documents that she experienced lightheadedness, nausea, diarrhea, constipation, and spotty periods for two months. Motion for

---

[5] Petitioner's mother was the original petitioner in this matter as her daughter was a minor.

4

Fees at 3-4 (citing Pet. Ex. 5 at 7). Her mother requested a letter for a 504 plan for school accommodations due to the severity of the Gardasil vaccine's impact on petitioner. Motion for Fees at 3 (citing Pet. Ex. 1 at 31).

Petitioner further submitted that the symptoms she suffered are the same as those contained in the Gardasil product insert as occurring post-vaccination. Motion for Fees at 4 (citing Pet. Ex. 3).

Finally, petitioner's daughter has a diagnosis of dysautonomia or autonomic dysfunction, a condition well-documented in the medical literature as being triggered by the Gardasil vaccine. Motion for Fees at 5 (citing Pet. Ex. 1 at 2, 29; Pet. Ex. 9-13).

Petitioner concluded by summarizing that she received the Gardasil vaccine, which is a covered vaccine in the Program, and manifested known vaccine-related symptoms that are contained in the manufacturer's product insert, and has been diagnosed with dysautonomia, which has been causally connected to the Gardasil vaccine in peer-reviewed medical literature. Motion for Fees at 3-5.

### B. Respondent's Response

Respondent argued it was apparent that the petition was filed solely to satisfy the statutory requirement of filing a claim for a vaccine-related injury in the Program so petitioner could then exit the Program to pursue a civil suit against Merck. Response at 3, 8. Therefore, petitioner did not bring the claim in good faith to adjudicate the issue on its merits, but only as a step toward bringing an action against Merck. In asking for reimbursement of fees and costs now, "petitioner is effectively asking the manufacturers, via the trust fund, to subsidize her civil suit against Merck…all while depriving Merck of the quid pro quo of a decision resolving her claim on the merits (which Merck could cite in petitioner's civil suit)." Thus, petitioner failed to bring her petition in good faith." Id. at 8.

Further, respondent argued that the medical records that petitioner alleges as supporting that her complaints began following the Gardasil vaccine actually note those complaints as first presenting years ago. Response at 9; Pet. Ex. 5 at 7. While petitioner argues that she has been diagnosed with dysautonomia, which has been causally connected to the Gardasil vaccine in peer-reviewed medical literature, none of the medical records filed provide any support for a diagnosis of dysautonomia. Response at 9; Pet. Ex. 1 at 2, 29. Further, neither petitioner's affidavit nor the VAERS report mention petitioner's pre-vaccination medical history; they allege events following the vaccination without citation to the medical records or other support. Thus, neither should be afforded any weight. Response at 10; Pet. Ex. 8; Pet. Ex. 14.

Finally, petitioner filed medical literature discussing the Gardasil vaccine and either dysautonomia generally or postural orthostatic tachycardia syndrome ("POTS") specifically, but there is no evidence in the medical record that petitioner has either condition and an expert has not opined that the articles are applicable in any way to petitioner. Response at 10; Pet. Ex. 9-13.

Respondent concluded that petitioner failed to meet her burden under the reasonable basis

5

analysis, did not file all the required medical records, failed to provide a reliable medical theory causally linking the Gardasil vaccine to her alleged injuries in general, failed to show the Gardasil vaccine was the reason for her alleged injuries specifically, and failed to demonstrate that there was a medically appropriate temporal relationship between her vaccination and the alleged injuries to support a finding of a causal association. Response at 10-11. Respondent added that finding reasonable basis and good faith in this case would thwart the Program's goal, which encourages petitioner's attorneys to perform fundamental due diligence and pursue claims that have some basis in fact, science, and law. Further, it would delay compensation for those cases where petitioners intend to the develop and litigate meritorious claims. Petitioner only used this Court to reach the goal of bringing her action against Merck directly, and the request for fees and costs should be denied. *Id*. at 11.

### C. Petitioner's Reply

Petitioner replied that respondent had already unsuccessfully raised these same arguments in *Thomas v. Sec'y of Health and Human Serv.*, No. 20-886V (Fed. Cl. Spec. Mstr. May 17, 2021) and is special master shopping. Reply at 1-2.

Petitioner argued that Congress did not contemplate nor does the Vaccine Program provide absolute immunity for vaccine manufacturers, and therefore there is no basis to state that petitioner is not within her rights to withdraw her petition and litigate against the manufacturer. Reply at 2-3.

The Special Master in *Thomas*, addressing these arguments held:

> As a threshold matter, although respondent is correct regarding the overarching purpose of the Vaccine Act as diverting vaccine litigation into this Program, respondent has wholly failed to explain how his invocation of that legislative history squares with the actual terms of the Vaccine Act which allow petitioner to do precisely as he has done in this case. Section 300aa-11(2)(A)(ii) of the Vaccine Act explicitly contemplates that a petitioner might pursue a civil action after withdrawing at 240 days rather than rejecting a judgment on the merits. Given the availability of the withdrawal mechanism within the statute itself, it is not readily apparent how petitioner has done anything other than comply with the letter of the Vaccine Act or even how petitioner's intentions violate the spirit of the Act.

Reply at 3-4 (citing *Thomas*, No. 20-886V (Fed. Cl. Spec. Mstr. May 17, 2021) at 7-8.

Therefore, respondent's argument that petitioner's counsel should be punished for exercising petitioner's statutory rights and exiting the Program must fail, as it did in *Thomas*. Reply at 4.

Petitioner further argued that the statute requires petitioners to first file in the Vaccine Program before pursuing the vaccine manufacturer directly, and petitioner has complied with that requirement. The Vaccine Program failed to issue a decision within 240 days and petitioner

6

withdrew her petition pursuant to 42 U.S.C. §300aa-21(b)(1). There is no requirement that the petitioner must litigate the claim to completion on the merits, and respondent cannot point to anything in the statute to support this argument. Reply at 5. Respondent's argument that petitioner deprived Merck of a "quid pro quo" in receiving a decision and judgment on the merits finds no basis in the Vaccine Program. *Id.* at 5-6.

As to good faith, which is a subjective inquiry, petitioner must demonstrate an honest belief that she suffered an injury due to the vaccination at issue. Reply at 6. Here, petitioner's mother filed an affidavit and a VAERS report attesting to her belief that her daughter was injured by the Gardasil vaccine. Further, since petitioner withdrew her petition to pursue this claim against Merck, good faith clearly exists. *Id.* at 7; Pet. Ex. 8; Pet. Ex. 14.

As for reasonable basis, respondent continued his argument made in other Gardasil cases that petitioner did not file an expert report. However, the reasonable basis standard requires only a mere scintilla of evidence, not proof of causation, and it has been well-stated that an expert report opining on causation is not required to establish reasonable basis. Reply at 7-8; citing *James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1382 (Fed. Cir. 2021).

Petitioner argues that the medical records show that after she received the first dose of Gardasil on July 17, 2017, she was dizzy upon standing and, within a few days, had a rash on her mouth, face, arms, and hands; had a panic attack; and felt weak and as if her body was numb with a heavy jaw and stiff neck. She also felt itchy, had vision problems, and felt like she was sedated. Reply at 8. A record notes that petitioner requested a 504 plan for accommodations at school because she was "severely impacted" by the Gardasil vaccine. The request lists petitioner's diagnosis as dysautonomia. Reply at 8-9; Pet. Ex. 1 at 29, 31. A history given at the gastroenterologist approximately two months after petitioner received the Gardasil vaccine included two months of lightheadedness, nausea, vomiting, diarrhea, constipation, and spotty periods, which she argues "lines up perfectly with receipt of her HPV vaccination" and are the same symptoms listed in the Gardasil package insert as occurring post-vaccination. Reply at 8-9; Pet. Ex. 5 at 7; Pet. Ex. 3 at 9-10.

Thus, as set forth in *Cottingham* and *James-Cornelius*, the package insert is probative evidence and there is a reasonable basis to believe there was a causal relationship between vaccination and the occurrence of the documented symptoms. Reply at 9-10 (citing *Cottingham*, 971 F.3d 1337; *James-Cornelius*, 984 F.3d 1374).

Petitioner argued that she has dysautonomia or autonomic dysfunction, a condition that is well-documented in the medical literature as being triggered by Gardasil vaccine, and that she suffered nine out of ten of the major symptoms associated with Gardasil vaccine listed in the *Ozawa*[6] criteria. Reply at 10-11; Pet. Ex. 9-13.

---

[6] Kazuki Ozawa et al., *Suspected Adverse Effects After Human Papillomavirus Vaccination: A Temporal Relationship Between Vaccine Administration and the Appearance of Symptoms in Japan*, 40 DRUG SAFETY 1219 (2017), filed as "Pet. Ex. 13."

7

Petitioner further argued that respondent ignored petitioner's mother's affidavit on her daughter's symptoms after receipt of the vaccination, a firsthand account of what she witnessed and objective evidence for purposes of reasonable basis. Reply at 10-11; Pet. Ex. 8.

Petitioner maintains that she received a covered vaccine in the Program and manifested known vaccine-related symptoms following receipt of this vaccine which are documented in the package insert. She has been diagnosed with dysautonomia, which has been causally connected to the Gardasil vaccine in medical literature, and therefore, reasonable basis for bringing this claim exists. Reply at 12.

### III.    Fees Are Appropriate for This Matter

Succinctly, respondent maintains that the threshold bases for fees in an "unsuccessful" case are not met here. However, consistent with *Atjian, Stratton*, *Thomas*, and other similarly decided cases, I find that the standard for awarding fees is in fact met.

First, the claim had sufficient good faith, even if counsel expected to withdraw it before its adjudication. Respondent argued that for a case to be brought in good faith, it must be brought "with the intent to litigate the merits of the claim" in the Program. Response at 7-8. However, in both *Atjian* and *Stratton*, the Chief Special Master rejected that definition in favor of petitioner's definition of good faith, which is the same as proposed herein, and found that good faith was satisfied simply because each petitioner believed the vaccine was injurious. *Atjian*, No. 21-1413V, 2022 WL 17587757, at *5-*6; *Stratton*, No. 20-1515V, 2023 WL 2337224, at *2; *see* Motion for Fees at 1-2.

Here, as evidenced by petitioner's mother's affidavit and the VAERS report, it is clear that she believed that the subject vaccine caused her symptoms and injury. Pet. Ex. 8; Pet. Ex. 14. Further, it is clear that petitioner *still* believes this since the petition was withdrawn for the sole purpose of pursuing the claim against the vaccine manufacturer directly. Motion for Fees at 1, 3.

Regarding reasonable basis, the claim had sufficient objective evidence to support petitioner's claim. In challenging reasonable basis, respondent argued that petitioner's claim was not supported by either medical opinion or her medical records. Response at 9. He further submitted that petitioner's mother's affidavit and VAERS report should be given no weight in determining whether the claim had reasonable basis. *Id*. at 10.

While the evidence filed would have been insufficient for a ruling on entitlement in favor of petitioner, a finding of reasonable basis requires a mere scintilla of objective evidence to support a feasible claim—a burden that is much lower than the preponderance of evidence standard required for entitlement. It is well-established that an expert report addressing causation is not necessary to show that a claim had reasonable basis. *James-Cornelius*, 984 F.3d at 1379-80. Further, the Federal Circuit explained in *James-Cornelius* that affidavits or sworn statements may provide objective evidence supporting a claim in the Vaccine Program. *Id*. at 1380-81.

The evidence filed herein showed that petitioner received the subject vaccine on July 17, 2017, and shortly thereafter experienced lightheadedness, nausea, and gastrointestinal issues,

among other symptoms, which were consistent with what was listed on the Gardasil package insert. Motion for Fees at 4; Pet. Ex. 5 at 7; Pet. Ex. 9 at 9-10. She was later diagnosed with dysautonomia. Pet. Ex. 1 at 2, 29.

While respondent argues that, based on the medical records, petitioner's alleged symptoms of gastrointestinal issues, headache, and dysmenorrhea began prior to her receipt of the Gardasil, the fact that some of petitioner's symptoms occurred at some level prior does not mean that her claim has no reasonable basis. There is still a possibility that the Gardasil vaccine significantly aggravated her pre-existing symptoms, especially in light of the statement in petitioner's mother's affidavit that petitioner cannot attend school, drive a car, continue attending dance, or maintain a job due to her symptoms following the vaccine. Pet. Ex. 8 at 2. Further, the affidavit lists many other symptoms that were not present in petitioner's records prior to the vaccine, including a diagnosis of dysautonomia. *Id*. at 2.

Additionally, petitioner filed medical literature supportive of a causal connection between dysautonomia and the HPV vaccine. Pet. Ex. 9-13. To prevail on entitlement, petitioner would have needed to provide evidence beyond her affidavit, the vaccine package insert, medical literature, and evidence of a temporal relationship between the vaccine and her symptoms. However, this evidence, taken with the records filed and affidavit, provide more than the "mere scintilla" of evidence required to support a determination of reasonable basis. Thus, I find that the claim was filed and maintained with a reasonable basis.

## IV. Attorneys' Fees and Costs Calculation

### A. Legal Standard

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include hours in their fee requests that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id.* at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011). Rather, when assessing attorney's fees and costs, the goal is to achieve a "rough justice." *Fox v. Vice*, 563 U.S. 826, 838 (2011),

### B. Attorneys' Fees

#### 1. Hourly Rates

9

Petitioner requests compensation based on the following rates: for attorney Andrew Downing, $385 per hour for work performed in 2020 and 2021; for attorney Courtney Van Cott, $275 per hour; and for paralegals Robert Cain and Danielle Avery, $135 per hour. *Id*. The requested rates are reasonable and consistent with what has previously been awarded for work these individuals have performed in other cases.[7] *See Stratton*, No. 20-1515V, 2023 WL 2337224.

### 2. Hours Billed

While much of the time billed in this matter was reasonable, issues with billing for clerical tasks and duplicative work remain. First, the billing records reveal various instances in which paralegal Danielle Avery billed for clerical tasks, including electronically filing documents via CM/ECF, reviewing the automatically generated emails for those CM/ECF filings, and correspondence regarding invoices. Motion for Fees, Ex. A at 4-10. In the Vaccine Program, this type of work "should be considered as normal overhead office costs included within the attorney's fee rates." *Rochester v. U.S.*, 18 Cl. Ct. 379, 387 (1989); *Dingle v. Sec'y of Health & Human Servs.*, No. 08-579V, 2014 WL 630473, at *4 (Fed. Cl. Spec. Mstr. Jan. 24, 2014). "[B]illing for clerical and other secretarial work is not permitted in the Vaccine Program." *Mostovoy v. Sec'y of Health & Human Servs.*, No. 02-10V, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) (citing *Rochester*, 18 Cl. Ct. at 387).

Second, the attorneys and paralegals who worked on this matter billed duplicative time for reviewing medical records. *See* Motion for Fees, Ex. A at 1-13. Each of the four legal professionals who billed time in this matter charged for reviewing the same medical records in some way. For example, paralegal Danielle Avery conducted "analysis" of records from Kennesaw Pediatrics, then paralegal Robert Cain "review[ed]" the same records to "identify potential action items." *Id*. at 6, 11. Attorney Van Cott then "conduct[ed] substantive review", and finally, attorney Downing billed for "analysis" of those same records. *Id*. at 1, 3. This pattern is repeated for almost all sets of medical records filed in this matter. In addition to the duplicative nature, I also find that a request for over $15,000.00 in attorneys' fees is excessive in a case that was only pending for approximately 240 days and did not progress beyond the collection of medical records. Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing. *See Ericzon v. Sec'y of Health & Human Servs.*, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); *Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), mot. for rev. denied, 129 Fed. Cl. 691 (2016).

Petitioner's counsel has been cautioned about the billing issues discussed above on numerous occasions. *See Mulrenin on behalf of R.M. v. Sec'y of Health & Human Servs.*, No. 18-22V, 2020 WL 7868230 (Fed. Cl. Spec. Mstr. Dec. 10, 2020); *Dreyer v. Sec'y of Health & Human Servs.*, No. 18-764V, 2019 WL 6138132, at *3 (Fed. Cl. Spec. Mstr. Oct. 29, 2019); *Sheridan v. Sec'y of Health & Human Servs.*, No. 17-669V, 2019 WL 948371 (Fed. Cl. Jan. 31, 2019). In light

---

[7] The 2015-2024 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

of this and based on the specific work performed in this case, I find that a 10% reduction in attorneys' fees is appropriate. This results in a reduction of **$1,526.30.**

Further, while petitioner's counsel has advanced the arguments made in the instant motion in similar cases before other special masters, this case is the first of its kind that I have addressed. For this reason, and because the instant motion was filed in the early stages of counsel's development of the arguments made therein related to 240-day withdrawal, I will compensate counsel as requested for his time spent researching and preparing what now appears to be standardized arguments for this type of case. However, in the future, counsel will only be awarded minimal attorney time for preparation and review of these fees motions.

### C. Attorneys' Costs

Petitioner requests $952.11 in costs. Motion for Fees at 6; Motion for Fees, Ex. A at 13. This amount is comprised of costs for obtaining medical records, postage and shipping fees, and the Court's filing fee. Motion for Fees, Ex. A at 12-20. In his Motion, pursuant to General Order No. 9, counsel indicated that petitioner did not incur out-of-pocket litigation costs. Motion for Fees at 7. I have reviewed the requested costs, find them to be reasonable, and award them in full.

### V. Conclusion

Based on the foregoing, petitioner's Motion and Supplemental Motion are **GRANTED, IN PART.** Accordingly, I award a total of **$14,688.81**, representing $13,736.70 in attorneys' fees and $952.11 in costs, **in the form of a check payable jointly to petitioner and petitioner's counsel, Mr. Andrew Downing, Esq**.

In the absence of a timely-filed motion for review pursuant to RCFC Appendix B, the Clerk of the Court shall enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

<u>s/Mindy Michaels Roth</u>
Mindy Michaels Roth
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.